BUILDING SUPPLY COMPANY OF ENGLEWOOD, NEW JERSEY, INCORPORATED, A CORPORATION OF NEW JERSEY, RESPONDENT, v. JOSEPH GREENBERG AND N. J. CAFARELLI, RECEIVERS FOR TEANECK BUILDING CORPORATION, BUILDER AND OWNER, AND EAST RUTHERFORD SAVINGS, LOAN AND BUILDING ASSOCIATION, MORTGAGEE-APPELLANT, DEFENDANTS.

Submitted May 29, 1930—Decided February 2, 1931.

For the appellant, *John M. Bell*.

For the respondent, *Solomon Goldman* and *Ryland E. Lippincott*.

The opinion of the court was delivered by

WELLS, J.   This is a mechanics' lien suit and out of it arises a dispute between a holder of advance-money mortgages and a materialman as to the priority of their respective claims.

The plaintiff supplied between September 28th, 1928, and January 18th, 1929, certain building materials to the Teaneck Building Corporation used by it in the construction of three one-family dwelling houses on a tract of land owned by it in the township of Teaneck, Bergen county, aggregating $6,782.75.   Subsequently the Teaneck Building Corporation paid $2,500 on account, leaving a balance of $4,282.75, for which plaintiff brings this suit.

On February 25th, 1929, the Teaneck Building Corporation was declared insolvent and Joseph Greenberg and N. J.

Cafarelli were appointed receivers by the Court of Chancery, which gave plaintiff leave to bring this suit.

The appellant, The East Rutherford Savings, Loan and Building Association, agreed to loan the Teaneck Building Corporation the sum of $5,000 on each of said three lots of land, taking three bonds and advance-money mortgages, dated December 7th, 1928, and duly recorded in the Bergen county clerk's office.

The sum of $4,900 was actually advanced by the appellant to the Teaneck Building Corporation on each of these three mortgages.

The lien claim of plaintiff was filed March 11th, 1929, and in the suit brought on said lien claim by the plaintiff-respondent against the receivers of the Teaneck Building Corporation, the East Rutherford Savings, Loan and Building Association (the appellant herein) was made a party defendant, as the holder of said mortgages.

The Circuit Court judge, before whom the case came up for trial, referred it to a referee to take and state the account between the parties and to report the same back to the Circuit Court. The referee found first, that the sum of $4,900 advanced by appellant on each of the three mortgages of $5,000, was entitled to priority in payment over the lien claim of the plaintiff; second, that plaintiff was entitled to a special lien against the premises described in the lien claim, subject to the lien of the appellant's mortgages.

No exceptions were filed by the defendant-appellant to any part of the referee's report.

The plaintiff-respondent, however, excepted to the report for the following reasons:

1. That the referee did not allow plaintiff a priority of its lien claim over the mortgages of appellant.

2. That the findings of the referee were errors in law with reference to the priority of the mechanics lien of the plaintiff over the mortgages of appellant.

And plaintiff prayed that the report of the referee be revised, in favor of the plaintiff in so far as priority of its

lien claim over the mortgages of the appellant, as a matter of law.

The matter came on before the Circuit Court judge on the exceptions to the referee's report. Counsel of appellant and respondent both argued orally and by briefs to the judge, the question of whether or not the appellant, to obtain a priority of its mortgage over respondent's lien claim, was obliged to trace the mortgage-money into the building—the judge, having found as a matter of law that it was necessary so to do, ordered the referee's report to be amended accordingly.

An order was thereupon entered giving the respondent a priority of its lien claims over the mortgages of the appellant, after the first payment of $3,000 made on each of said three mortgages—the respondent having given its consent to the appellant, making said payments to the builder and owner and having waived its claim to priority over said mortgages to the extent of the $3,000 so advanced on each mortgage.

The first contention on the part of the appellant is that there was harmful error in the action of the Circuit Court in amending the referee's report, and confirming the same after it was amended.

It may be that a careful examination of the "Practice act" of 1903, under which appellant claims this reference was made, will not disclose any power in the Circuit Court to amend the referee's report, in the manner attempted, and that the only remedy for erroneous decisions of the referee is on motion to set aside the report and grant a new trial, as suggested by appellant. We do not think it necessary to pass upon this interesting question in deciding this case. Both parties here without objection dealt with the matter as if it were being tried by the Circuit Court on exceptions to the report of the referee.

Both the appellant and respondent argued the meritorious questions involved orally before the Circuit judge and by written briefs.

The Circuit judge therefore tried without objection on the part of either party to the litigation, the meritorious ques-

tions involved and a rule for judgment was entered accordingly.

In *Kapherr* v. *Schmidt,* 98 *N. J. L.* 803, this court held that:

"Where parties to an action try and submit the question at issue upon a theory apparently satisfactory to themselves, and suffer the case to go to the jury upon the legal theory thus adopted, it is too late, upon appeal, for either party, for the first time, to question the legal propriety of the course pursued."

It seems to us, therefore, that the first contention of appellant is without merit.

It is next contended that on the merits of the case, the judgment of the Circuit Court should be reversed.

Appellant claims that the referee was right in finding that the amount of $4,900 actually advanced on each of the $5,000 mortgages was prior to the lien claim of respondent.

The referee found that the claim of the plaintiff in this suit rested upon section 14 of the Mechanics' Lien act (*Pamph. L.* 1898, *p.* 538; 3 *Comp. Stat., pp.* 3302, 3303), and that under this section, advance-money mortgages were prior to mechanics' lien claims to the extent of all moneys advanced prior to the time when the lien claims are filed. He cites the case of *Franklin Society* v. *Thornton,* 85 *N. J. Eq.* 525, decided by this court, as authority for his conclusion.

In our opinion section 15 and not section 14 of the Mechanics' Lien act is applicable to the case *sub judice.*

Section 14 has to do with purchase-money mortgages which are also advance-money mortgages, and Mr. Justice Swayze, in the case of Franklin Society *v.* Thornton, was dealing with a combination purchase-money and advance-money mortgage, and very properly held that in such a situation the right of the mortgagee under section 14 of the Mechanics' Lien act was superior to the mechanics' lien claim, to the extent of the amount actually advanced on the mortgage prior to the time of the filing of the lien claims.

Section 15 of the Mechanics' Lien act (*Pamph. L.* 1898, *p.* 538; 3 *Comp. Stat., p.* 3303), provides that:

"Every mortgage given or to be given upon lands in this state shall have priority over any claim that may be filed in pursuance of this act to the extent of the money actually advanced and paid by the mortgagee and applied to the erection of any new building upon the mortgaged lands or any alterations, repairs or additions to any building on said lands, provided such mortgage. be registered or recorded before the filing of any such claim."

It is clear, therefore, that under section 15 of the act, in order for the appellant to gain priority for the moneys advanced on its mortgages over the lien claim of plaintiff-respondent, it would have to prove that the moneys secured by its mortgages were actually advanced and paid by it and applied to the erection of the buildings upon the land mortgaged.

The mortgages in the instant case were not purchase-money mortgages, and while they precede the lien claim in point of date, yet they were all made and recorded after the buildings were commenced and before the lien claim was filed.

Said Vice-Chancellor Stevens, in the case of *The Improved Building and Loan Association* v. *Larken,* 88 *N. J. Eq.* 52 (at *p.* 56):

"Since the decision of the Court of Errors and Appeals in *Franklin Society* v. *Thornton,* 96 *Atl. Rep.* 922, and of the Supreme Court in *Young* v. *Haight,* 69 *N. J. L.* 453, there can be no doubt as to the rule. Says Chief-Justice Gummere, in the latter case: 'The only test is whether the money has been loaned for the erection of the * * * the building and has been actually applied to that purpose.' If labor or material have gone into the building, money lent to pay for such labor or material would, of course, be within the rule, and, equally, it seems to me, would be money lent to pay a contractor or subcontractor to whom, under his contract, payment is due for work actually done. But money paid to a person charged with the duty of paying such contractor does not come within the rule, unless it be further proved that such money was actually paid over."

In the recent case of *Thirteenth Ward Building and Loan*

*Association* v. *Kanter,* 105 *N. J. Eq.* 338, Vice-Chancellor Backes, on page 341, says:

"The master misconceived the quality of proof required to sustain the burden cast upon the complainant in its effort to supersede the statutory priority of lien claimants. A mortgage executed *after* the commencement of a building is not entitled to priority over mechanics' liens for money advanced on the mortgage unless it is actually applied to the erection of the building. The proof must trace the money from the mortgagee into the hands of labor or materialmen. *Young* v. *Haight,* 69 *N. J. L.* 453."

"Mortgage-money paid to a builder who used it to repay moneys he had borrowed and applied to the construction of a building is not an item earning priority under section 15 of the Mechanics' Lien law. To displace the statutory priority of mechanics' lien by a mortgage given for money to be used for the construction of the building, the proof must be clear, certain and convincing that the money was actually used for labor and material in the construction."

In the case *sub judice* it did not appear that the moneys advanced by the appellant mortgagee were used for the erection and construction of the buildings. In fact there was no attempt made by the appellant mortgagee to show that the moneys advanced by it were actually applied to the erection of the buildings and there is no testimony of any other witness which indicates this to be a fact.

Lastly, it is asserted that it was error for the court to enter judgment against the receivers to be specially made of the lands and buildings described in the complaint, but that a general judgment should have been rendered against the receivers only.

The purpose of the Mechanics' Lien law is to secure to mechanics and materialmen pay for their labor and materials, and to accomplish this purpose the statute gives a lien upon the buildings for the value of the labor and materials in the event of failure to pay for the same. This being the right given by the statute we think the trial court was entirely justified in enforcing the right.

We conclude that the judgment under review should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ.   14.

*For reversal*—None.